# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **GARY BRADLEY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:22-cv-00304-LY** |
| **GATEHOUSE MEDIA TEXAS** | § | |
| **HOLDINGS II, INC d/b/a AUSTIN** | § | |
| **AMERICAN-STATESMAN,** | § | |
| *Defendant* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Gatehouse Media Texas Holdings II, Inc. d/b/a Austin American-Stateman's Rule 12(c) Motion for Judgment on the Pleadings, filed October 10, 2022 (Dkt. 8); Plaintiff Gary Bradley's Response, filed October 31, 2022 (Dkt. 12); and Defendant's Reply, filed November 17, 2022 (Dkt. 15). The District Court referred the motion to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 17.

## I.    Background

Plaintiff Gary Bradley, an Austin, Texas resident, sues Defendant Austin-American Statesman ("Statesman") over a newspaper advertisement he bought from the Statesman on behalf of a group of members of Riverbend Church. Bradley alleges that he helped develop the church in 1979, chaired the Church Council, was very involved in the church's day-to-day operations, and was a friend of its late pastor, Dr. Gerald Mann. Dkt. 7 (Plaintiff's First Amended Complaint) ¶ 14. *Id.* After Mann's retirement, in 2005, the church hired Dave Haney as its new pastor. *Id.*

1

Bradley alleges that: "Following Dr. Mann's passing in late 2015, and at his request, some members of the church began to reconsider their allegiance to Haney." *Id.* ¶ 15. Bradley and other members of the church eventually decided to seek new leadership. *Id.* Bradley alleges: "In many churches, denying a pastor's budget is akin to removing the pastor. Riverbend had a budget meeting scheduled for late February [2020], and the group knew they needed all church members, both current and former, to vote the pastor's budget down and, ultimately, secure new leadership." *Id.* ¶ 16. "To spread awareness and maximize attendance at the vote, the group reached out to the Statesman" about buying a newspaper advertisement. *Id.*

Bradley alleges that "his career has been marked by a turbulent relationship with the Stateman," that the paper's coverage of him "has been unfavorable, focused on unfairly painting him in a negative light," and that the paper has a "vendetta against him." *Id.* ¶¶ 8, 13. He alleges that the Statesman "investigated Bradley, his business associates, friends, family, and even his pastor for a year before publishing a lengthy—and negative—series on Bradley." *Id.* ¶ 9. He alleges that the Statesman's negative coverage of him "continued for many years," and that: "It appears the Statesman still harbors negative perceptions of Bradley to this day." *Id.* ¶ 12.

All the same, on February 1, 2020, Bradley met with Statesman representative Amber Rebold to discuss buying an advertisement for the church meeting. *Id.* ¶¶ 16-17. Bradley alleges that Rebold told him the price of the ad, and that he "told her he needed to ensure that his identity would remain anonymous." *Id.* ¶ 17. Bradley alleges that the parties "reached an agreement that Bradley would pay the Statesman to run the advertisement for the budget meeting, and the Statesman guaranteed Bradley's confidentiality." *Id.* ¶ 18.

Bradley alleges that he paid $3,400 for the advertisement with his credit card on February 20, 2020, and the advertisement ran the next two days. *Id.* ¶ 19. Bradley asserts that he did not fill out

the Statesman's intake forms, sign an advertising agreement, or agree to any liability-limiting terms, conditions, or disclaimers. *Id.* Instead, he alleges that "someone at the Statesman filled out the intake agreement to ensure the receipt would be sent to the church." *Id.* ¶ 23. The Statesman mailed a copy of Bradley's invoice to Riverbend Church on March 1, 2020. Bradley alleges that he received an email from a member of the Church Council with the invoice attached. *Id.* ¶ 20. Members of the church allegedly began to treat him as "an outsider and a traitor," which "led Bradley and his family to the heartbreaking decision that they had to leave the church." *Id.* Bradley asserts that the Statesman's conduct caused him economic damages and mental anguish. *Id.* ¶ 25.

On February 25, 2022, Bradley filed suit against the Statesman in Texas state court, asserting breach of contract, negligence, intentional infliction of emotional distress, and claims under the Texas Deceptive Trade Practices Act (DTPA). *Bradley v. Gatehouse Media Texas Holdings II, Inc.*, No. D-1-GN-22-000962 (250th Dist. Ct., Travis, Cnty., Tex. Feb. 25, 2022). The Statesman filed an answer denying the allegations and asserting various defenses, then removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. 1. In his First Amended Complaint, his live pleading, Bradley asserts the same claims as in the state court action and seeks damages of more than $1 million. Dkt. 7 ¶ 31.

The Statesman now moves for judgment on the pleadings under Rule 12(c).

## II.    Legal Standard

The Court has subject-matter jurisdiction pursuant to diversity jurisdiction and finds the requirements for diversity jurisdiction satisfied: there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332. Therefore, Plaintiff's claims are governed by Texas state law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity applies the choice of law

rules of the state in which it sits); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) ("Texas adheres to the most significant relationship test for both contract and tort cases. Although the number of contacts is relevant, the qualitative nature of the contacts controls.") (footnote omitted). As "all of the relevant conduct" between Bradley and the Statesmen occurred in Texas and the parties do not dispute the law that controls, Texas law governs and will be applied to Bradley's claims. *Jackson*, 245 F.3d at 523.

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020) (citations omitted).

The standard for evaluating Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To survive a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing the complaint, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002).

### III.     Analysis

In his Amended Complaint, Bradley asserts claims under the Deceptive Trade Practices Act and for common-law negligence, intentional infliction of emotional distress, and breach of contract. The Statesman moves for judgment on all claims.

### A. Breach of Contract

To state a claim for breach of contract under Texas law, a plaintiff must allege that (1) a valid contract exists; (2) the plaintiff performed as contractually required; (3) the defendant breached by failing to perform as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

For his breach of contract claim, Bradley alleges, in pertinent part:

> Bradley and the Statesman entered into an oral contract whereby the Statesman promised that it would publish an advertisement for Bradley in exchange for payment of $3,400.00. The Statesman made an additional promise to keep his identity confidential and, if necessary, treat him as a confidential source.
> The Statesman is liable to Bradley because it breached the contract by sending an invoice detailing the advertisement to Riverbend Church.

Dkt. 7 ¶¶ 44-45.

The Statesman contends that Bradley "fails to sufficiently define the parameters" of the purported promise of confidentiality. Dkt. 8 at 16. The Statesman argues that the alleged oral confidentiality promise "lacked 'a reasonable degree of certainty and definiteness' for the parties and the court to understand the obligations and what constitutes a breach." *Id.* at 17 (quoting *Shipley v. Vasquez*, 534 S.W.3d 482, 487 (Tex. App.—San Antonio 2017, pet. denied)). Bradley responds that the alleged promise was definite enough to be enforceable.

Under Texas law, the elements of a valid and enforceable contract are: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each

party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 WL 11221433, at \*3 (W.D. Tex. Oct. 19, 2017) (citing *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied)). The elements are the same for written and oral contracts, and must be present for a contract to be binding. *Id.* An agreement "is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Shipley*, 534 S.W.3d at 487 (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)); *see also Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 835 (N.D. Tex. 2011) (stating that "all that is required is that the essential terms of the promise are sufficiently defined for the court to evaluate the parties' obligations"). If the essential terms are not reasonably definite and certain, an oral agreement is not enforceable. *Shipley*, 534 S.W.3d at 489.

Although Bradley's allegations are not as vague as the oral promises in some cases the Statesman cites,[1] the Court finds that he has not pled the Statesman's obligations under the purported confidentiality agreement with "a reasonable degree of certainty and definiteness" so that the Court may evaluate them. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (1955)).

Bradley alleges that "Rebold guaranteed Bradley that he could place an ad anonymously, and that the Statesman could not and would not use the advertisement to run a story. She also assured Bradley that, if necessary, the Statesman would treat him as a confidential source." Dkt. 7 ¶ 18. Taking the facts in the Amended Complaint as true and viewing them in the light most favorable to Bradley for purposes of this Report and Recommendation, the Statesman thus agreed to

---

[1] *E.g.*, *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 794 (Tex. App.—Dallas 2007, no pet.); *Garcia v. Dairy Queens of W. Tex.*, Inc., No. 07-97-0154-CV, 1998 WL 479755, at \*3 (Tex. App.—Amarillo Aug. 17, 1998, no pet.); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ); *Wiley v. Bertelsen*, 770 S.W.2d 878, 883 (Tex. App.—Texarkana 1989, no writ).

(1) place Bradley's advertisement anonymously, (2) not use the ad to run a story, and (3) "treat [Bradley] as a confidential source." Dkt. 7 ¶¶ 18, 44.

Bradley does not allege that the Statesman breached any of these agreements. Rather, he alleges that the Statesman breached the parties' oral contract "by sending an invoice detailing the advertisement to Riverbend Church." *Id.* ¶ 45. But Bradley does not plead that the alleged oral confidentiality agreement addressed the invoice. Nor does he allege that he ever bargained with or asked the Statesman to mail the invoice directly to him, although he received a receipt by email showing the mailing address as Riverbend Church more than a week before the invoice was mailed. Dkt. 7 ¶¶ 19-20; Dkt. 8-1. If Bradley contends the parties entered into any further agreement to "keep his identity confidential" or guarantee his confidentiality as to the invoice, Dkt. 7 ¶ 44, he has not pled facts sufficient for the Court to evaluate the parties' obligations under its reasonably definite and certain essential terms.

The Court finds that Bradley has not plausibly alleged a valid contract exists by stating its essential terms in sufficient detail. Therefore, he has not pled an oral agreement that is enforceable as a matter of law and fails to state a claim for breach of contract under Texas law. The Court recommends that the Statesman's motion for judgment be granted as to Bradley's breach of contract claim.[2]

**B.  Economic Loss Doctrine**

Next, the Statesman argues that Bradley's DTPA, negligence, and intentional infliction of emotional distress claims are barred by the economic loss doctrine because his alleged losses arise "solely and directly from the alleged breach of the Confidentiality Promise" and he pleads no

---

[2] Because the Court finds that Bradley's breach of contract claim fails for lack of definiteness, it need not reach the Statesman's other arguments on this claim.

separate or independent injury. Dkt. 8 at 19. Bradley responds that he may assert tort claims in the alternative to his breach of contract claim on the premise that the contract does not include a promise of confidentiality. Dkt. 12 at 18.

The economic loss doctrine "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *TEU Servs., Inc. v. Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *3 (W.D. Tex. Feb. 5, 2018) (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)). The Texas Supreme Court has extended the principles underlying the economic loss rule to DTPA claims that assert a "mere breach of contract." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam); *see also Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (stating that "an allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA") (cleaned up).

Courts have found it premature to dismiss claims under the economic loss doctrine for torts pleaded in the alternative to breach of contract claims. *See, e.g.*, *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 573 F. Supp. 3d 1161, 1171 (S.D. Tex. 2021) (denying motion to dismiss on economic loss doctrine where plaintiff pled alternative theories); *Hybrid Energy Servs., Ltd. v. Magness Oilfield Brokerage, LLC*, No. 5:16-CV-090-C, 2016 WL 11673473, at *3 (N.D. Tex. Aug. 5, 2016) (same)*; cf. Sunday Riley Mod. Skin Care, L.L.C. v. Maesa*, No. H-12-1650, 2014 WL 722870, at *6 (S.D. Tex. Feb. 20, 2014) (finding negligent misrepresentation claim barred by economic loss rule where plaintiff did not plead claim in the alternative to breach of contract). Because Bradley pleads his tort claims in the alternative, the Court recommends not entering judgment on the pleadings on those claims under the economic loss doctrine.

### C. Deceptive Trade Practices Act

Bradley alleges that, under the Texas DTPA, he is entitled to damages for (1) breach of contract, (2) breach of warranty, (3) engaging in an unconscionable act, (4) knowingly or intentionally disclosing his identity, and (5) mental anguish. Together with the economic loss doctrine arguments addressed above, the Statesman contends that Bradley's unconscionable conduct and breach of warranty claims under the DTPA are not actionable, and that his claim for mental anguish damages is not plausibly pleaded. The Statesman also argues that Bradley's DTPA claims fail because they "ultimately rest" on its alleged failure to perform the putative contract. Dkt. 8 at 20-21.

To sustain a claim under the DTPA, a plaintiff must show that (1) the plaintiff was a consumer; (2) the defendant engaged in either false, misleading, or deceptive acts, or an unconscionable action or course of action; and (3) the Act's laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (quoting *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App.—El Paso 2012, pet. denied)).

#### 1. Rule 9(b)

First, the Statesman argues that Bradley fails to plead his claims with particularity under Rule 9(b). The heightened pleading standard of by Rule 9(b) applies to claims under the DTPA, "regardless of the provision invoked." *Ebotuka v. JetBlue Airlines*, No. 1:21-CV-478-RP, 2022 WL 1518943, at *4 (W.D. Tex. Mar. 14, 2022) (quoting *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *6 (S.D. Tex. Oct. 7, 2019)). Rule 9(b) requires "allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the

person making the misrepresentation and what [s]he obtained thereby." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015) (citation omitted).

Bradley alleges that on February 1, 2020, Statesman representative Amber Rebold orally guaranteed his confidentiality "and intended to induce Bradley into purchasing the advertisement by promising complete anonymity." Dkt. 7 ¶¶ 17-18, 29. He thus has alleged the "who, what, when, where, and why" of his DTPA claims. *See In re Life Partners Holdings*, 926 F.3d 103, 117 (5th Cir. 2019) (stating that "to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct"). Accordingly, the Court finds that Bradley has alleged sufficient facts to satisfy Rule 9(b).

### 2. Mental Anguish

Next, the Statesman asserts that Bradley has not sufficiently alleged damages for mental anguish. In his Amended Complaint, Bradley alleges that, after he received an email from a member of the Church Council with an attachment of the invoice for his ad, he suffered the following mental anguish damages:

> As word spread, Bradley was embarrassed and humiliated. Members of the church, especially those who supported Haney, began treating Bradley as if he were an outsider and a traitor. These events led Bradley and his family to the heartbreaking decision that they had to leave the church.
>
> . . .
>
> As a result of the Statesman's conduct, Bradley has suffered economic damages and losses. He has also suffered the type of anguish one would expect from being ostracized and ultimately forced to leave a congregation that he loved, helped build, and was a source of many relationships he equated to family.

Dkt. 7 ¶¶ 20, 25.

Plaintiffs must allege sufficient facts to establish that they suffered a type of injury for which the DTPA provides a remedy, including economic and mental anguish damages. *Biggers v. BAC*

*Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 733 (N.D. Tex. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Taking all facts Bradley alleges as true, the Court cannot draw a reasonable inference that the Statesman is liable for mental anguish damages. Rather, the reasonable inference is that Bradley's own actions caused him to be "ostracized and ultimately forced to leave" Riverbend Church. Although Bradley did not submit the ad with his Complaint, he characterizes it as "controversial" and pleads that its aim was: "To spread awareness and maximize attendance at the vote" "to vote the pastor's budget down and, ultimately, secure new leadership." Dkt. 12 at 1; Dkt. 7 ¶ 16. The reasonable inference is that Bradley's mental anguish arose from the congregation's response to his attempt to vote down the pastor's budget and ultimately oust him, not from the Statesman's mailing of the invoice. While Bradley alleges that he needed to place the ad anonymously, *id.* ¶ 17, he never alleges that his attempt to oust the pastor otherwise would or could have been carried out in secret. To the contrary, Bradley pleads that he attempted to "maximize attendance" at the church budget meeting because "the group knew they needed all church members, both current and former, to vote the pastor's budget down." *Id.* ¶ 16.

Bradley does not plausibly plead that the Statesman's conduct "was a producing cause of the mental anguish," the third element of his mental anguish claim under the DTPA. *Jabri v. Alsayyed*, 145 S.W.3d 660, 669 (Tex. App.— Houston [14th Dist.] 2004, no pet.). The Court finds Bradley has failed to plausibly plead a claim for mental anguish against the Statesman and recommends that the District Court grant judgment on this claim.

### 3.   Breach of Warranty

The Texas DTPA prohibits the breach of implied or express warranties created by statute or recognized by the common law. *Shakeri*, 816 F.3d at 294 (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995)). An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." TEX. BUS. & COM. CODE § 2.313(a)(1).[3] Express warranties are enforced in service transactions, despite warranty law primarily developing within the context of the sale of goods. *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574 (Tex. 1991)).

The elements of a claim for breach of warranty for services are: (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury. *Marc Ellman, MD., P.A. v. MDOffice LLC*, No. EP-21-CV-290-DB, 2022 WL 980640, at *6 (W.D. Tex. Mar. 31, 2022) (quoting *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.— Dallas 2007, no pet.)).

In his Amended Complaint, Bradley alleges that the Statesman "represented that their services would include a characteristic and benefit (i.e., confidentiality) which they did not." Dkt. 7 ¶ 29. The Statesman argues that Bradley "does not allege any defects in the Statesman's performance of its promise to publish the Advertisement. Instead, Plaintiff's allegations exclusively concern a separate alleged promise to maintain his confidentiality." Dkt. 15 at 10. The Statesman also

---

[3] Although the Texas Uniform Commercial Code governs the sale of goods, it is "instructive" in a service transaction. *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 575 (Tex. 1991).

contends that Bradley's claim fails as a matter of law because a "mere promise to perform does not constitute an express warranty." *Id.* (citation omitted). Bradley responds that breach of warranty remedies are available to a consumer "who has bought and accepted services but discovers the services are defective in some manner." Dkt. 12 at 13. Taking his allegations as true, Bradley argues, the Statesman "published the ad but failed to follow through on its express warranty to maintain Bradley's confidentiality or anonymity. The Statesman delivered an 'incomplete package,' and Bradley can pursue his DTPA claim for breach of express warranty." Dkt. 12 at 14.

The "whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell." TEX. BUS. & COM. CODE § 2.313, cmt. 4. The Court finds that there is a material fact dispute on several elements of Bradley's express warranty claim, including whether the Statesman made a representation to Bradley about the characteristics of its ad service, the representation became part of the basis of the bargain, and the Statesman breached the warranty. The Court recommends denying judgment on the pleadings as to Bradley's express warranty claim.

### 4. Unconscionable Conduct

For his final DTPA claim, Bradley alleges that: "The Statesman knowingly, recklessly, or intentionally disclosed to Riverbend Church Bradley's purchase of the advertisement. The Statesman's conduct was unconscionable." Dkt. 7 ¶ 29.

The DTPA defines an "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). To prove an unconscionable action, a plaintiff must show that (1) the defendant took advantage of his lack of knowledge, and (2) "the resulting unfairness was glaringly noticeable, flagrant, complete, and

unmitigated." *Ardoin*, 2019 WL 4933600, at *6 (quoting *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001)). A plaintiff must allege an act or practice that could have resulted in liability even in the absence of a contract. *Shakeri*, 816 F.3d at 295 (quoting *Crawford*, 917 S.W.2d at 13).

The Statesman contends that because Bradley "does not plead how the Statesman 'took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree'— and in fact, pleaded the opposite," Dkt. 15 at 10, he has not met the requirements for pleading unconscionability. The Court agrees. First, as stated above, Bradley has not pleaded that the parties' alleged oral confidentiality agreement addressed the invoice, that he asked the Statesman to mail the invoice directly to him, or any other facts sufficient to show the parties' obligations under the purported agreement. Nor does Bradley plead that the Statesman's allegedly unconscionable act of mailing an invoice to the church could have resulted in liability in the absence of a contract. Second, the conduct undergirding Bradley's unconscionability claim – disclosing his purchase of the advertisement, Dkt. 7 ¶ 29 – occurred weeks after the ad sale. Unconscionability must relate to the alleged transaction itself, not post-transaction conduct. *Huynh*, 30 F.4th 454 (quoting *Charlie Thomas Chevrolet, Ltd. v. Martinez*, 590 S.W.3d 9, 19 (Tex. App.—Houston [1st Dist.] 2019, no pet.)). Finally, rather than lacking in knowledge, capacity, ability, or experience, Bradley pleads that he is a successful and "prominent real-estate developer," "talented," "active in the local political sphere," with experience with the Statesman. Dkt. 7 ¶¶ 5, 8-12.

### 5.  Conclusion on DTPA Claims

For these reasons, this Magistrate Judge recommends that the District Court grant the Statesman's Rule 9(c) motion and enter judgment on all Bradley's claims under the Texas DTPA except his claim for breach of express warranty.

**D. Common-Law Negligence**

To state a claim for negligence under Texas law, the plaintiff must allege: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018). The Statesman argues that Bradley's negligence claim fails because he does not allege a legal duty it owed to him. Bradley responds that he pled three legal duties in the alternative: "(i) a duty to perform the oral contract with care; (ii) a duty of good faith and fair dealing because the oral contract created a special relationship; and (iii) a duty to perform a voluntary undertaking with care." Dkt. 12 at 16.

First, Bradley argues that every contract includes a common-law duty to perform the contract with care, and no special relationship is required. Dkt. 12 at 16. His reliance on the contract for a common-law duty to perform with care is misplaced. In *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991), the Texas Supreme Court distinguished its statement in *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (1947), that "[a]ccompanying every contract is a common-law duty to perform with care." The court explained that in *Montgomery Ward*, the defendant had both a contractual duty and a common-law duty; it breached its contractual duty by failing to properly perform repairs and its common-law duty by burning the plaintiff's house down. *Id.* The "crucial distinction" set out in *DeLanney* is that misfeasance or affirmative conduct can subject a party to tort liability, but failing to fulfill a promise in the absence of a duty to act does not. *Bruce Foods Corp. v. Tex. Gas Serv.*, No. EP-13-CV-231-KC, 2014 WL 652312, at *5-6 (Feb. 19, 2014) (citing *DeLanney*, 809 S.W.2d at 495). The Court finds that Bradley's first negligence theory fails because he has not pled that the Statesman owed him a duty under tort law based on the contract.

As to his second alleged duty, Bradley did not respond to the Stateman's arguments that he does not plead a special relationship existed between the parties, as required to plead a duty in tort based on a contract. The Court agrees that Bradley does not allege that these facts fall into "an extremely narrow class of cases" involving special relationships, which are "earmarked by specific characteristics including: long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). Bradley does not state a negligence claim under his second theory.

For his third alleged duty, the Statesman argues that the Court need not impose a legal duty in the context of a negligent undertaking claim, which Bradley has not pled. Dkt. 15 at 12 n.11. Texas courts have limited negligent undertaking claims to "situations where bodily injury or [physical] injury to property belonging to the party is involved." *Bruce Foods*, 2014 WL 652312, at *7 (quoting *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 03-09-00566-CV, 2011 WL 2769838, at *7 n.4 (Tex. App.— Austin 2011, appeal abated)); *see also Pelayo v. 24 Hour Fitness USA, Inc.*, No. H-19-1747, 2019 WL 6686702, at *4 (S.D. Tex. Nov. 21, 2019), *R. & R. adopted*, No. H-19-1747, 2019 WL 6683129 (S.D. Tex. Dec. 6, 2019); RESTATEMENT (SECOND) OF TORTS § 323 (1965)). Bradley alleges neither bodily injury nor physical injury to property and cannot recover under a negligent undertaking theory.

## E.  Intentional Infliction of Emotional Distress

Finally, the Statesman argues that Bradley's intentional infliction of emotional distress claim should be dismissed because it is a "gap-filler" tort and other claims are available. Dkt. 8 at 27.

Intentional infliction of emotional distress permits recovery in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d

438, 447 (Tex. 2004). If the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress claim will not lie whether or not the plaintiff succeeds on, or even alleges, the alternate claim. *Id.* at 448; *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App.—San Antonio 2008, no pet.); *see also, e.g.*, *Van Tiem v. First Am. Home Warranty Corp.*, No. 1:18-CV-458, 2019 WL 1422620, at *9 (E.D. Tex. Jan. 23, 2019), *aff'd sub nom. Van Tiem v. First Am. Title Co.*, No. 20-40707, 2021 WL 4537689 (5th Cir. Oct. 4, 2021); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

The gravamen of Bradley's complaint is breach of contract and deceptive trade practices. He cannot bring an intentional infliction of emotional distress claim "premised on the same facts." *Stelly v. Duriso*, 982 F.3d 403, 409 (5th Cir. 2020). The Court recommends that his intentional infliction of emotional distress claim be dismissed.

## IV.    Recommendation

Based on the foregoing, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Gatehouse Media Texas Holdings II, Inc. d/b/a Austin American-Stateman's Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 8) and enter judgment **DISMISSING** all of Plaintiff's claims **EXCEPT** his claim for breach of express warranty under the Texas Deceptive Trade Practices Act (Count One in part).

It is **ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.*

*United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 8, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE