## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **GARY BRADLEY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:22-cv-00304-DAE** |
| **GATEHOUSE MEDIA TEXAS** | § | |
| **HOLDINGS II, INC d/b/a AUSTIN** | § | |
| **AMERICAN-STATESMAN,** | § | |
| *Defendant* | | |

## O R D E R

Now before the Court is Plaintiff Gary Bradley's Motion for Sanctions and, Alternatively, Motion to Compel, filed May 30, 2023 (Dkt. 38); Defendant's Response, filed June 6, 2023 (Dkt. 40); and Plaintiff's Reply, filed June 13, 2023 (Dkt. 42). By Text Order entered June 1, 2023, the District Court referred Plaintiff's Motion to this Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). The Court held a hearing on the Motion on July 24, 2023.

### I.    Background

Plaintiff Gary Bradley sued Defendant the Austin-American Statesman newspaper ("Statesman") over an advertisement he bought on behalf of a group of members of Riverbend Church. Bradley alleges that in February 2020, he paid $3,400 for an ad challenging the church pastor's leadership after Statesman representative Amber Rebold agreed the paper would keep his identity anonymous. Bradley, who contends that the Statesman has a "vendetta" against him, alleges that a copy of his invoice was mailed to Riverbend Church, disclosing his identity as the person who placed the ad. Dkt. 7 (First Amended Complaint) ¶ 13. He asserts claims for breach of contract and express warranty under the Texas Deceptive Trade Practices Act. *See* Dkt. 32 at 3.

1

In his Motion, Bradley argues that the Statesman's corporate representative did not provide sufficient testimony on eight of the twenty-five topics listed in his Rule 30(b)(6) deposition notice. He asks the Court to either order the Statesman to produce another witness to testify on these topics or prohibit the Statesman from offering evidence on them and "instruct the jury as to animus related to the contentions." Dkt. 38 at 14.

## II.     Legal Standards

Under Rule 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).

A trial court enjoys wide discretion in determining the scope and effect of discovery. *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

## III.     Analysis

Before turning to the merits of Bradley's motion, the Court addresses the Statesman's arguments that the motion should be denied as untimely and for failure to confer.

**A. Timeliness**

Discovery closed May 12, 2023. Dkt. 35 ¶ 1. The District Court's Second Amended Scheduling Order provided that: "Any motions relating to discovery shall be filed by May 19, 2023." *Id*. On that date, Bradley filed Plaintiff Gary Bradley's Motion for Sanctions and, Alternatively, Motion to Compel (Dkt. 36), which was fifteen pages long. By Text Order entered May 22, 2023, the District Court referred the motion to this Magistrate Judge for disposition. On May 23, 2023, this Court entered a text order dismissing the motion without prejudice pursuant to Local Rule CV-7(c)(2), which limits discovery motions to ten pages. On May 24, 2023, Bradley filed Plaintiff Gary Bradley's Unopposed Motion for Leave to Exceed Page Limit. Dkt. 37. By text order entered May 30, 2023, this Court granted Bradley's motion for leave and directed the Clerk to file his overlength Motion to Compel in the docket.

The Statesman argues that the Motion to Compel is untimely because it violates the Court's Scheduling Order as well as Local Rule CV-16(e), which provides: "Absent exceptional circumstances, no motions relating to discovery . . . shall be filed after the expiration of the discovery deadline, unless they are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery." Because the corporate representative's deposition that is the subject of Bradley's Motion to Compel was taken April 18, 2023, the motion does not pertain to conduct that occurred during the final seven days of discovery, as required by Local Rule CV-16(e). Dkt. 40-5 at 2.

The Court concludes that the District Court's scheduling order providing that "[a]ny motions relating to discovery shall be filed by May 19, 2023" supersedes the requirements of Local Rule. Dkt. 35 ¶ 1. But the motion Bradley filed on the May 19, 2023 deadline set by the District Court was overlength, resulting in its dismissal. The Court agrees that the Motion to Compel

subsequently filed with leave of court was untimely under the Court's Second Amended Scheduling Order and could be dismissed on that basis.

## B.  Failure to Confer

The Statesman also argues that Bradley failed to satisfy the conference requirements of Rule 37(a)(1) and Local Rule CV-7(g) before filing his Motion to Compel. Local Rule CV-7(g) provides, in pertinent part:

> The court may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made.

Similarly, Rule 37(a)(1) states that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

In his Certificate of Conference, Bradley states that counsel have conferred "in an effort to resolve this matter, including specific discussions regarding the production of documents and the corporate representative's testimony (and lack thereof). Despite such discussions the Defendant has not sought to tender any further witnesses to respond to the undesignated Rule 30(b)(6) topics, thus necessitating this Motion." Dkt. 38 at 15. Bradley emphasizes that the Statesmen never filed a motion for protective order, despite repeatedly objecting to the disputed deposition topics. The Statesman responds that Bradley's "minimal efforts to resolve the specific issues in the Motion were (1) brief, (2) untimely, and (3) not substantive. The parties spent approximately ten minutes during two conversations more than 45 days ago discussing the issues in the Motion." Dkt. 40 at 12-13 (footnote omitted).

Again, the Court agrees that Bradley's efforts to confer were insufficient to satisfy Local Rule CV-7(g). Bradley's Reply includes a "timeline of the most pertinent events." Dkt. 42 at 2. It ends on April 18, 2023 – more than a month before he first filed his Motion to Compel. Immediately after the corporate representative deposition, counsel for the parties conferred as to the disputed topics for "at least 10-15 minutes," during which Bradley's counsel suggested the Statesman might provide requested information in an affidavit. *Id.* at 3; Dkt. 42-1 at 5 ¶ 10. Later the same day, the Statesman's counsel sent an email to Bradley's counsel, stating in part:

> We are also discussing your other proposal with our client and will be back in touch to see if there is something we can do to address your concerns. We appreciate you outlining your concerns and position to us, and listening to ours. We are working to see if we can find some common ground.

*Id.* at 3, 46. Neither party initiated further discussion in the ensuing month before Bradley filed his Motion to Compel.

Considering the entire course of communications between counsel for the parties on the disputed discovery, it is apparent that they did not exhaust their efforts to reach agreement before Bradley filed his Motion to Compel. The parties are admonished that motion practice must be a "recourse of last resort" in resolving a discovery dispute. *Rainbow Energy Mktg. Corp. v. DC Transco, LLC*, No. 1:21-cv-313-RP, 2022 WL 2820670, at *1 (W.D. Tex. July 18, 2022) (citation omitted); *Draper v. Bank of Am., N.A.*, No. A-11-CA-505-SS, 2012 WL 12878606, at *2 (W.D. Tex. Mar. 8, 2012) ("Neither side should seek determinations from this Court, except as a last resort."); *see also McCallum v. Camping World, Inc.*, 2019 WL 9197839, at *1 n.1 (W.D. Tex. Dec. 17, 2019) (Garcia, C.J.) (explaining that "good faith" requirement of Local Rule CV-7 "requires two-way communication which is necessary to genuinely discuss any issues and to avoid judicial recourse"). The Court could deny the Motion for this reason, as well.

**C.  Most of the Discovery Bradley Seeks Is Disproportionate to the Needs of the Case**

Although Bradley's Motion to Compel could be denied as untimely and for failure to confer, in the interest of judicial economy, the Court exercises its discretion to reach the merits.

In general terms, this discovery dispute arises because the Statesman produced a corporate representative to testify on the topics Bradley identified only with respect to its advertising department, but Bradley seeks discovery from the separate editorial department of the newspaper. He theorizes that due to the "vendetta" against him by the Statesman and its former editor Rich Oppel,[1] who retired in 2008, a Statesman employee intentionally changed the information in his advertising account to harm him by disclosing his identity as the buyer of the Riverbend Church ad. *See, e.g.*, Dkt. 38 at 3. He also contends that the corporate representative was insufficiently prepared.

Bradley seeks to compel testimony on the following topics:[2]

> 20. The Austin American Statesman's internal procedures regarding storage or retention of internal communications of the editorial staff, and the ability to word search through such communications.

> 24. Whether emails written or received by Rich Oppel still exist, and are maintained (or possessed in any form) by the Austin American Statesman.

> 25. Whether Rich Oppel's notes, emails, memos concerning Plaintiff exist from 1995 to present, and if so, in what format are they maintained or possessed?

Bradley also seeks to compel testimony on the following topics "as they related to anything other than advertising," Dkt. 38 at 14:

---

[1] Bradley alleges: "The negative coverage began long ago when the Statesman hired Rich Oppel as its editor." Dkt. 7 ¶ 9.

[2] Although the Statesman in its Response also addresses certain requests for production, Bradley seeks relief only as to the eight listed 30(b)(6) deposition topics. Dkt. 38 at 14.

6.  The policies at the Austin American Statesman for maintaining the confidentiality of a source or informant.

18. Communications with current or former Austin American Statesman employees and/or representatives about the advertisement and/or Plaintiff.

21. Plaintiff's internal reputation and related documentation, within the Austin American Statesman and with its employees.

22. Internal discussions relating to Plaintiff.

23. The document retention policy maintained by the Austin American Statesman and in particular, the editorial staff.

The Statesman responds that the discovery Bradley seeks is irrelevant, overbroad, unduly burdensome, disproportionate to the limited needs of this case, "unknown and no longer exists," and protected by the reporter's privilege. Dkt. 40 at 17.

As stated above, Bradley's claims are for breach of contract and breach of express warranty. The amount in controversy is the cost of his ad: $3,400. Dkt. 40 at 16. When he placed the ad, Bradley communicated only with Rebold, then a Statesman advertising account executive who has left the paper. Bradley Tr. at 67:22-68:7, Dkt. 40-2 at 3-4. And Bradley has deposed the Statesman's corporate representative on the identified topics with respect to advertising.

The Court agrees with the Statesman that Bradley's wide-ranging discovery from its editorial department seeks information that is overbroad, unduly burdensome, and disproportionate to the needs of this $3,400 case under Rule 26(b)(1). Information such as the newspaper's policies "for maintaining the confidentiality of a source or informant" (Topic 6) and its long-retired former editor's notes and emails (Topics 24 and 25) dating to 1995 are entirely irrelevant to Bradley's claims concerning the address to which the Statesman mailed an advertising invoice a quarter-century later. The same is true of the editorial department's document retention procedures and

policies (Topics 20 and 23). Because discovery from the paper's editorial department has no importance in resolving Bradley's claims, it is outside the scope of discovery under Rule 26(b)(1).[3]

The three remaining topics for which Bradley seeks discovery other than from the Statesman's advertising department are "internal discussions relating to Plaintiff," Bradley's "internal reputation" at the Statesman, and "[c]ommunications with current or former Austin American Statesman employees and/or representatives about the advertisement and/or Plaintiff" (Topics 18, 21, and 22). In his reply brief, Bradley argues that information from the Statesman's editorial department is relevant to his claims because evidence "that would go directly to whether the breach was intentional and motivated by ill will" is relevant to materiality. Dkt. 42 at 5. Bradley cites TEXAS CIVIL PATTERN JURY CHARGES – BUSINESS, CONSUMER, INSURANCE & EMPLOYMENT PJC 101.17 (2022 ed.), "Instruction on Materiality," which lists "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing" as one of five circumstances to consider in determining whether a failure to comply is material. The Statesman argues that motivation is irrelevant to Bradley's claims. Dkt. 40 at 15.

Bradley's claims for breach of contract and breach of warranty arise from the mailing of the invoice for his advertisement to his church. He testified that he did not provide his mailing address or even discuss the invoice with anyone at the Statesman. Bradley Tr. at 70:22-71:25, Dkt. 40-2 at 5-6. The Statesman's corporate representative, Andrea Vick, testified that it is not possible to determine who changed the client in the advertising forms from Bradley to the church because the paper no longer uses the same system.[4] Vick Tr. at 59:3-10, Dkt. 40-5 at 3. Rebold testified that

---

[3] Because the Court has found that the discovery Bradley seeks from the Statesman's editorial department is not discoverable under Rule 26(b)(1), it does not address the newspaper's contention that it is protected by the reporter's privilege.

[4] The Statesman noted at the hearing that Bradley did not file suit until two years after he placed the ad.

she did not know who, if anyone, made the change, or whether the system did so automatically. Rebold Tr. at 101:9-103:5, Dkt. 40-6 at 5-7.

At the hearing, the parties agreed that the Statesman would provide an affidavit concerning the following information:

1. Whether the Statesman's advertising department has a separate server from the editorial department and anyone from editorial could have accessed the invoice system.

2. Whether there is an email archive for the Statesman advertising department.

3. Whether the Statesman has access to the previous invoice system.

### IV.   Conclusion

For all of these reasons, Plaintiff Gary Bradley's Motion for Sanctions and, Alternatively, Motion to Compel (Dkt. 38) is **GRANTED IN PART and DENIED IN PART**. The Statesman is **ORDERED** to serve an affidavit addressing the three topics listed above by **August 4, 2023**. All other relief not expressly granted is **DENIED**.

It is **ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

**SIGNED** on July 25, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE